I can not recognize the doctrine contended for by the prisoner's counsel, namely, that as the offence was committed in the Sound and thus came within the jurisdiction of the United States' courts, the state courts have no jurisdiction.
Each government punishes for itself offences against itself. And because the United States' courts have cognizance of an offence on our tide waters, it by no means follows that the state authorities may not also take cognizance of it. The jurisdiction of the federal authorities is not exclusive except where it is attended by a cession of territory or expressly made so by a law of congress in cases where congress have the power to legislate. Now here was no cession of territory nor is exclusive jurisdiction given by the United States statutes to the United States courts over offences except where they are offences against the laws of the United States. So while it would not be competent for the state tribunals to take cognizance of an act that was *Page 303 
made a crime only by the laws of the United States, they may take cognizance of the same act if it is also made a crime by the state laws. For then each government would punish offences against itself, and in matters over which the state authorities had jurisdiction originally this concurrent power must exist, unless it be determined that the same act can not at the same time be an offence against both governments. If it may be so, and I see no reason why it should not, then it must be that each government must have power to punish the same act as an offence against each jurisdiction.
It may however be that this will involve the hazard of a man's being punished twice for the same offence. But against this there is a practical and sufficient remedy which is growing up in the practice of the several federal and state courts as congress extends its power by its enactments, and that is in allowing the judgment in one court to be pleaded in bar in the other (Houston v. Moore, 5 Wheat. 1; 1 Kent Com. 399).
If this view is correct, then in this case it is necessary to inquire whether the offence was committed within the territory of the state and is made punishable by the state laws. Upon that point there is no room for a doubt. That was the only point raised in the court below, and the court had no doubt that the boundary line from the east end of Long Island to the boundary of Connecticut, ran straight from one point to the other across the Sound and did not as claimed by the prisoner's counsel follow the windings of the inner or north shore of Long Island to a point opposite the mouth of Byram river and then in a straight line across the Sound. It was this latter line alone which placed the offence without the territorial limits of the state, and for such a line the court saw no authority whatever In that opinion I concur.
There is however another point in this case not raised below but which may nevertheless be considered here. It is this:
The indictment is general for a larceny committed in the county of New York. It was not in fact committed within the body of that county but in that of Suffolk. And the offence could properly be laid in New York only where under § 44 it *Page 304 
was committed on board a vessel navigating a river, c., which in the course of its trip passed through the county of New York, or, under § 50, where the property stolen in one county and brought into another was taken by burglary or robbery (2 R.S. 727).
Now the difficulty in this case is to determine under which of these sections the prisoner was convicted. And this is a material question, because the difference in the punishment is very great; in one case being limited to imprisonment for five years and in the other extending to imprisonment for life. It seems to me that the indictment ought to contain the necessary averments to point and locate the offence in the particular part of the statute under which a conviction is sought.
Under such a general mode of pleading as was adopted in this case the prisoner might be convicted either of a larceny in the city of New York or of a larceny in any other county on board of a vessel which in the course of its trip passed through the county of New York, or of stealing property in some other county and bringing it into the county of New York. He would not know from the pleadings which of them was the offence charged against him. He might not even find out on the trial, and finally ascertain only by the extent of the punishment awarded afterwards. This is a looseness of pleading not tolerated in civil suits, and much less in criminal cases where greater strictness has always prevailed.
The rule in criminal pleading is that the charge must contain such a description of the crime and statement of the facts by which it is constituted as to identify the accusation lest the charge be of one offence and the conviction of another; as to enable the defendant to know the crime he is called to answer and to claim any right or indulgence belonging to each offence; as to enable the court to see a definite offence on the record and apply the proper judgment and punishment; and as to enable the defendant to plead a former judgment in bar (1 Ch. Cr. L. 169). Now in all these respects such a general mode of pleading in such a case as this, as has been adopted in this case, is a departure from sound and salutary rules. *Page 305 
And therefore I think the judgment ought to be arrested and the judgment of the Supreme court should be reversed.
RUGGLES, Ch. J., GARDINER, JEWETT and JOHNSON, JJ., were in favor of a reversal of the judgment upon the ground that the offence was committed in the county of Suffolk and not within the county of New York, and that the portion of Long Island Sound where the steamboat was at the time of the offence, was an arm of the sea and not a river, lake or canal within the contemplation of 2 R.S. 727, § 44. The other questions discussed by WELLES and EDMONDS, JJ., were not passed upon
GRIDLEY and WATSON, JJ., were absent.
Judgment reversed.